**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:25-CV-00098-HBB**

LAQUAN K.[1]                                                                                          PLAINTIFF

VS.

FRANK BISIGNANO, COMMISSIONER OF
SOCIAL SECURITY                                                                          DEFENDANT

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

### I.      BACKGROUND

Before the Court is the Complaint (DN 1) of Laquan K. ("Plaintiff") seeking judicial review

of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both Plaintiff (DN 12)

and Defendant (DN 15) have filed a Fact and Law Summary.  Plaintiff did not reply.  For the

reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 6).  By Order entered December

2, 2025 (DN 7), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.  No such request was filed.

### II.      FINDINGS OF FACT

On May 3, 2022, Plaintiff protectively filed an application for Disability Insurance Benefits

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

(Tr. 171-75). Plaintiff alleged that she became disabled on April 13, 2022, as a result of rheumatoid arthritis, arthritis, depression, high blood pressure, chronic fatigue, chronic pain, anxiety, dizziness, swelling, and stiffness (Tr. 189, 218). The application was denied initially and upon reconsideration (Tr. 66-83).

On November 14, 2023, Administrative Law Judge ("ALJ") Lisa Hall conducted a hearing (Tr. 17). ALJ Hall determined that Plaintiff has the following severe impairments: rheumatoid arthritis and obesity (Tr. 20). The ALJ also determined that Plaintiff has nonsevere impairments of hypertension, depression, anxiety, and PTSD (Tr. 21-22). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she can lift and carry ten pounds occasionally; she can sit, stand, and walk six hours each in an eight-hour workday; she can frequently perform fine manipulative tasks, like handling and fingering; she should avoid concentrated exposure to vibration; and she should avoid all exposure to hazards such as unprotected heights or moving and dangerous machinery (Tr. 24). ALJ Hall found that Plaintiff is capable of past relevant work as a family case worker, and that she can perform jobs that exist in significant numbers in the national economy (Tr. 31-32).

The ALJ concluded that Plaintiff has not been under a disability from April 13, 2022, through the date of the decision (Tr. 32). Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 7-11), which the Appeals Council denied (Tr. 1-4).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton*

*v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court reviews the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

### B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).

3

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520.  In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).

### C.      Residual Functional Capacity

*1.  Arguments of the Parties*

Plaintiff avers that the RFC finding is not supported by substantial evidence because the ALJ mistakenly asserted that her arthritis symptoms improved with movement but Plaintiff can only move for fifteen minutes at a time (DN 12-1 PageID # 456-57).  Plaintiff believes this is error because the RFC must reflect a claimant's ability to perform regular, ongoing work—not intermittently (*Id.*).

In response, Defendant avers that ALJ Hall considered Plaintiff's subjective complaints that her symptoms return after fifteen minutes but properly discounted them (DN 15 PageID # 468-69).  Defendant contends that substantial evidence supports the ALJ's RFC finding as the ALJ considered the objective medical evidence (*Id.* at PageID # 465-68).

4

## 2. *Applicable Law*

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 404.1546(c).  ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.  20 C.F.R. §§ 404.1529, 404.1545(a)(3).  In making the RFC determination, ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.  20 C.F.R. §§ 404.1520c, 404.1529(a).

## 3. *Discussion*

ALJ Hall determined that Plaintiff is capable of performing sedentary work with additional limitations (Tr. 24).  Plaintiff contends that the ALJ improperly asserted that "Plaintiff's stiffness 'improves with movement'"[2] when she "can only sustain movement for brief periods— approximately 15 minutes—before experiencing significant fatigue and a return of symptoms." (DN 12-1 PageID # 456).  Because of this error, Plaintiff believes that the RFC is not supported by substantial evidence and should be remanded.

Plaintiff established care with Dr. Patel in 2022, where she "[r]eports the longer she is still the joints become stiffer and once she gets moving, tends to improve." (Tr. 293).  The ALJ noted this when discussing those records, and referenced them again when discussing records from a November 2022 visit, stating:  "She stated that her pain was worse with walking and standing too long, or with repetitive motions.  However, she previously reported that her symptoms improve with movement (Exhibit 2F/15)." (Tr. 25) (citing Tr. 293).  Contrary to Plaintiff's assertion, the

---

2 No citation accompanies the quoted language in Plaintiff's brief.

ALJ did not rely solely on this report of improvement with movement: ALJ Hall discussed and considered a rheumatology consult at Vanderbilt in August 2022; evaluation for rheumatoid arthritis in November 2022; a return visit to Vanderbilt in December 2022; treatment records from PARN Diane Goetz in February 2023; treatment at a rheumatology center in July 2023; and follow-up care in September and October 2023 (Tr. 24-27) (citing Ex. 2F, 6F, 7F, 8F, 9F, 10F, 11F). The ALJ considered Plaintiff's reported symptoms from April 2022 through the hearing held in November 2023, finding them largely unsupported (Tr. 27-29). ALJ Hall adopted the RFC and limitations opined by the state agency medical consultants, finding them persuasive (Tr. 30) (citing Ex. 2A, 4A). While the ALJ did twice mention the report that Plaintiff's symptoms improved with movement, the bulk of her determination does not rely on it (Tr. 24-25). Thus, even if the ALJ erred by relying on Plaintiff's reported improved symptoms after movement, because the ALJ's decision is supported by substantial evidence, no error warrants remand.

### D.    Frequent Handling and Fingering

#### 1. *Arguments of the Parties*

Plaintiff avers that the ALJ cherry picked the evidence to find Plaintiff capable of frequent handling and fingering despite her repeated reports "that she cannot use her hands for more than short intervals due to rheumatoid arthritis pain and inflammation" (DN 12-1 PageID # 457). Plaintiff believes this error invalidates the ALJ's finding her capable of sedentary work (*Id.*).

Defendant responds that the ALJ supported her determination of sedentary work with detailed discussion of the evidence in the record, such as the consultative examination showing 5/5 bilateral grip strength and normal sensation (DN 15 PageID # 469-70).

### 2. Applicable Law

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3). In making the RFC determination, ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### 3. Discussion

A claim that the ALJ improperly cherry picked the evidence "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). The task before the Court is not to re-weigh the evidence or resolve conflicts, but to determine if the decision of the Commissioner is supported by substantial evidence and comports with applicable law. *Id.* Here, Plaintiff asserts that the "ALJ failed to reconcile this evidence [that Plaintiff can only use her hands for short periods] with the RFC and instead relied on isolated normal findings." (DN 12-1 PageID # 457). First, there is no unresolved conflict, as the ALJ found her claim that she could use her hands for no more than fifteen minutes at a time unsubstantiated, because her testimony regarding the intensity and limiting effects of her symptoms inconsistent with normal examinations and positive response to treatment (Tr. 30).

Second, to the extent the ALJ relied on "isolated normal findings" the inquiry is whether substantial evidence supports the ALJ's RFC determination. *See DeLong*, 748 F. 3d at 726. As discussed above, ALJ Hall supported her determination with substantial evidence, considering

7

medical opinion evidence and the objective medical evidence of record.  Specifically, the ALJ

discussed Plaintiff's ability to frequently handle and finger:

> The claimant testified on November 14, 2023, that rheumatoid arthritis affects her hands including her wrists and finger joints.  She testified she has permanent deformity in her wrist and hand joints, her feet, and her ankles.  However, the consultative examination indicated no deformities, swelling, etc.  She testified that more recently it was affecting her knees, but with treatment, she had normal gait without an assistive device.  While it is reasonable to find the claimant continues to have some degree of symptoms related to rheumatoid arthritis, her symptoms are not of the severity to preclude a range of sedentary work as defined in her residual functional capacity.  She is also limited to frequent fine manipulative tasks such as handling and fingering.

(Tr. 28).  Finding that Plaintiff does continue to experience symptoms related to arthritis, the ALJ

limited her to frequently handle and finger (*Id.*).  Because substantial evidence supports the ALJ's

determination that Plaintiff can frequently handling and fingering, no error warrants remand.

### E.    Ability to Work Full-Time

#### 1.  *Arguments of the Parties*

Plaintiff avers the ALJ improperly relied on positive response to medication to find her

capable of full-time work (DN 12-1 PageID # 457-58) (citing *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 248-49 (6th Cir. 2007)).  Plaintiff believes "the record demonstrates that even with

treatment, Plaintiff continues to experience fatigue, pain, and flare-ups." (*Id.* at PageID # 458).

In response, Defendant avers that the ALJ limited her to sedentary work with additional

limitations, crediting her reported symptoms (DN 15 PageID # 470).  Defendant points out that

Plaintiff bears the burden of proving that she is more limited than the ALJ found (*Id.*).

#### 2.  *Applicable Law*

In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations

of the claimant and make findings.  20 C.F.R. § 404.1529; Social Security Ruling 16-3p.  A

claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain alleged. 20 C.F.R. § 404.1529(a). In determining whether a claimant suffers from debilitating pain, the two-part test set forth in *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the ALJ must "examine whether there is objective medical evidence of an underlying medical condition." *Id.* If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When, as in this case, the reported pain suggests an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. § 404.1529(c)(3).

A plaintiff's level of daily activity is a factor which the ALJ may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. § 404.1529(c)(3)(i); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (ALJ may consider household and social activities to evaluate complaints of disabling pain). A second factor is the frequency that plaintiff has sought treatment for the allegedly disabling condition is also a factor that may be considered in assessing his subjective complaints. 20 C.F.R. § 404.1529(c)(3)(v). A third factor is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between [Plaintiff's] statements and the rest of the evidence . . ." 20 C.F.R. § 404.1529(c)(4). Yet another factor is the

medication used to alleviate the alleged pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(iv).

Mild medication and infrequency of dosages do not bear out claims of debilitating pain.  *See Maher v. Sec'y of Health & Hum. Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989).

### 3.  Discussion

Plaintiff believes the ALJ should not have relied on records showing that Plaintiff's symptoms responded positively to medication but takes no issue with the records themselves. Plaintiff does not cite any specific records in support.  Plaintiff seems to rely on her testimony that she has flare-ups and disabling pain and fatigue, but the ALJ addressed and explained her decision discounting her testimony:

> She testified that she has sleep apnea, and evidence indicates she uses CPAP therapy.  She testified she has chronic fatigue, but she is alert, awake and oriented per treatment notes, and she drives per her function report (Exhibit 5E).  She testified she has good and bad days, but the preponderance of evidence does not support that her bad days are of the frequency and/or severity to preclude all work. Her testimony of having two to five major flare-ups a month is unsupported and inconsistent with her reports that she is improved.  She testified she can stand up 15 minutes to wash dishes.  While she has had some swelling on examination, it has also improved with treatment, and there is nothing in the record indicating it is medically necessary to elevate her legs during an eight-hour workday as long as work is performed within the limitations of the residual functional capacity along with regularly scheduled breaks and rest periods.
>
> She testified that before she quit working her employer was accommodating her limitations.  She was required to drive to seven different counties, but due to dizziness and fatigue, others did the work for her.  Her testimony of flare-ups is not adequately supported by the medical record as treatment notes generally show refills of medication and minimal complaints.  She testified she was unable to pinpoint any triggers.  Her testimony that it takes a week to recover from a bad flare-up is not supported.  In addition to minimal complaints and minimally positive clinical findings, lab studies also show improvement.  The undersigned is not persuaded by her testimony that she needs to lie in the floor with her feet elevated for six hours a day given her positive response to medication.  She testified she has been fatigued for years, but she is not treated for fatigue beyond CPAP therapy for sleep apnea, which she stated at the hearing was helpful.  She and her husband fix meals together and per her function report, she drives, pays bills, reads, watches

television, and listens to music.

(Tr. 29).  In sum, the ALJ credited many of Plaintiff's symptoms by limiting her to the lightest range of work, with further limitations:  "The undersigned notes that while the claimant has some limitations, complaints of more extreme incapacity are not fully supported by or consistent with the medical record to preclude the range of work set forth in the residual functional capacity assessment." (*Id.*).

ALJ Hall discussed Plaintiff's daily activities, frequency that Plaintiff sought treatment, inconsistencies between Plaintiff's testimony and the rest of the evidence, and the medication used to alleviate her symptoms, comporting with 20 C.F.R. § 404.1529(c)(3).  Plaintiff's reliance on *Rogers* is unavailing as *Rogers* addressed fibromyalgia, "where subjective complaints play an important role in the diagnosis and treatment of the condition," such that "providing justification for discounting a claimant's statements [of disabling pain] is particularly important."  486 F.3d at 248; *see Canfield v. Comm'r of Soc. Sec.*, No. 01-CV-73472-DT, 2002 U.S. Dist. LEXIS 18921, at *4 (E.D. Mich. Sep. 13, 2002) (explaining that there are no laboratory tests proving fibromyalgia and its symptoms are entirely subjective).  Because substantial evidence supports ALJ Hall's determination of Plaintiff's RFC and comports with applicable law, no error warrants remand.

### F.    Medical Opinion Evidence

#### 1.  Arguments of the Parties

Plaintiff avers that the ALJ "rejected the consultative examiner's opinion as 'vague' and inconsistent with examination findings" without meaningfully discussing supportability and consistency (DN 12-1 PageID # 458).  Plaintiff contends that the ALJ improperly played doctor by ignoring abnormal findings and longitudinal evidence, warranting remand (*Id.*).

In response, Defendant avers that the ALJ thoroughly discussed the evidence and explained

how the medical opinion of Dr. Cage was inconsistent (DN 15 PageID # 471-72).

### 2. *Applicable Law*

ALJs evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5).  20 C.F.R. § 404.1520c(a)-(b).  The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(c)(1)-(5).  Of these five factors, the two most important are supportability and consistency.  20 C.F.R. § 404.1520c(a) and (b)(2).  Further, the regulations require ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).

### 3. *Discussion*

Though Plaintiff does not name or cite the medical opinion, it is assumed that Plaintiff takes issue with the ALJ's finding that Dr. Cage's opinion is "vague and unpersuasive" as Defendant also assumes (*See* DN 15 PageID # 471).  After the ALJ recounted Dr. Cage's findings from a consultative exam performed on November 12, 2022, ALJ Hall explained:

> In Dr. Cage's opinion, the claimant is limited in her ability to sit, stand or ambulate by history yet the undersigned notes that the examination was essentially normal aside from some nodules in her knuckles.  Dr. Cage opined that the claimant is limited in the ability to perform fine motor tasks, but provided no specific limitation.  She noted that the claimant cannot perform activities of daily living without assistance, and noted that her limited range of motion during flares may make it difficult for her to perform certain tasks and maintain a job.  However, her examination was essentially normal and does not support the limitations set forth by Dr. Cage.  In fact, the claimant reported that she can sit without issues.  While there is no evidence the claimant was in a flare at the time of the consultative

examination, any limitations by Dr. Cage pertaining to a flare would be based solely on the claimant's subjective reports, and is not persuasive. While the claimant used a cane, she had normal gait, and the undersigned is not persuaded to find a cane is medically necessary. Therefore, her residual functional capacity does not allow for the use of a cane. She had some nodules about her knuckles for which she is limited to frequent handling and fingering. She had 5/5 bilateral grip strength, which supports no greater manipulative limitations. Overall, the opinion of Dr. Gage is vague and unpersuasive given the largely normal examination. (Exhibit 6F)[.]

(Tr. 25-26). Here, ALJ Hall discussed consistency and supportability in detail (*Id.*). In comparison to *Hardy*, which Plaintiff relies on, where the ALJ's discussion consisted of one sentence, ALJ Hall's discussion is more than adequate. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021). Thus, no error exists warranting remand.

### G.      Misplaced Reliance on Evidence

*1. Arguments of the Parties*

Plaintiff avers that the ALJ improperly relied on evidence from a general practitioner rather than from a rheumatologist (DN 12-1 PageID # 458). Plaintiff contends that ALJ Hall relied on statements that Plaintiff was doing well[3] to find her capable of sustaining work, but were really an "improvement relative to baseline" (*Id.*)

In response, Defendant avers that the ALJ properly considered the evidence from the rheumatologists, which showed swelling but otherwise normal results (DN 15 PageID # 472-73).

*2. Applicable Law*

The Court reviews the Commissioner's decision for substantial evidence. *Cotton*, 2 F.3d at 695. Substantial evidence exists where the evidence reasonably supports the ALJ's conclusion, even if the evidence could support the opposite. *Id.* "However, a substantiality of evidence

---

3 Plaintiff fails to provide a citation or identify the source of this statement. The undersigned's review of the record revealed two instances in which Plaintiff reported to her doctor that "she is doing well with her current medication." (Tr. 407, 423).

evaluation does not permit a selective reading of the record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citation modified).

### 3. Discussion

Plaintiff believes the ALJ improperly "relied on notes from a general practitioner while minimizing the significance of rheumatology evidence." (DN 12-1 PageID # 458). Plaintiff fails to cite or identify to which general practitioner or rheumatology evidence she refers. To the extent that Plaintiff argues that the ALJ ignored the full record and relied on less probative evidence, the argument fails (*Id.*) (citing *Brooks*, 531 F. App'x at 641). First, the rheumatology evidence, if Plaintiff refers to evidence supporting her rheumatoid arthritis, shows that she does suffer from arthritis in her hands, wrists, knees, feet, and ankles, but is otherwise normal. For example, the ALJ recounted the findings from consultative examiner Dr. Cage that showed nodules but normal bilateral grip strength, no swelling, erythema, atrophy scarring, anatomic deformity, spasms, or tenderness, and normal range of motion in all major joints (Tr. 25-26) (citing Ex. 6F). Records from a visit to Vanderbilt with a rheumatology specialist showed nodules but Plaintiff could make a complete fist and there was no swelling, warmth, tenderness, or limited motion in the bilateral upper or lower extremity joints, though there was mild swelling of the right wrist (Tr. 24-25) (citing Ex. 7F). At a follow-up visit to Vanderbilt several months later, Plaintiff reported improvement in her joint swelling and stiffness, though her right wrist was tender, no modifications were made

to her medication regimen (Tr. 26) (citing Ex. 7F). Second, the ALJ credited her rheumatoid arthritis, concluding that "due to the severity of her rheumatoid arthritis and obesity, she is limited to a range of sedentary work." (Tr. 28). None of the doctors, specialist or general practitioners, opined that Plaintiff was totally disabled or for specific limitations. Thus, the ALJ did not minimize "the significance of rheumatology evidence" but credited much of the findings (DN 12-1 PageID # 458).

As to Plaintiff's contention that the "ALJ cited statements that Plaintiff was 'doing well,' but failed to recognize that such statements reflect improvement relative to baseline—not the ability to sustain work" the undersigned finds this proposition unsupported (*Id.*). First, as discussed above, the ALJ relied on substantial evidence, including two medical opinions from consultative examiners, results of physical examinations, frequency that Plaintiff sought treatment, Plaintiff's daily activities, and medication used to alleviate her symptoms to find Plaintiff capable of sustaining work—more than Plaintiff's statement she was "doing well." Second, improvement relative to baseline is commonly employed in evaluating mental impairments as a person can improve but their baseline can be such that any improvement still renders the person disabled. *See Shafor v. Comm'r of Soc. Sec.*, No. 1:19-CV-860, 2020 U.S. Dist. LEXIS 242028, at *15 (S.D. Ohio Dec. 23, 2020). Here, Plaintiff's improvement is known, as in the same visit where Plaintiff reports "doing well with her current medication" she states that "she was crippled and in a wheelchair when this first began" but now "[s]he states her morning stiffness is < 20 minutes." (Tr. 406-07). As Plaintiff's baseline, being wheelchair bound, and improvement, stiffness for less than twenty minutes in the morning, is known, there has been no improper reliance on the description that Plaintiff is "doing well." The undersigned finds no error supporting remand.

15

### H.    Step Four Finding

#### 1. *Arguments of the Parties*

Plaintiff avers that the ALJ failed to make specific findings as to the physical and mental demands of Plaintiff's past relevant work and compare them to her RFC, as required (DN 12-1 PageID # 459).

In response, Defendant avers that the ALJ found Plaintiff could perform her past relevant work as performed in the national economy, not as Plaintiff performed it, so no error exists (DN 15 PageID # 473-74). Defendant contends that the ALJ relied on the vocational expert's testimony, but that the ALJ also made alternative step five findings, so any error at step four would be harmless (*Id.* at PageID # 475-76).

#### 2. *Applicable Law*

It is the claimant's burden at step four of the sequential evaluation process to show an inability to return to any past relevant work, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), or to prove that a past job should not be considered relevant. *Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 109-10 (6th Cir. 1989). By showing a medical basis for an impairment that prevents her from engaging in her particular occupation, the claimant establishes a *prima facie* case of disability. *Boren v. Sec'y of Health & Hum. Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990).

To support a finding that a claimant can perform past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of her past job as actually performed, or as ordinarily required by employers throughout the national economy. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); 20 C.F.R. § 404.1565; Social Security Ruling 82-61.

16

A vocational expert's testimony must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. *Hardaway v. Sec'y of Health & Hum. Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). There is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints. *Id.* It is the Commissioner's job to evaluate the trustworthiness of the vocational expert's testimony. *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (per curiam).

### 3. Discussion

ALJ Hall found Plaintiff capable of performing past relevant work as a family case worker, which "does not require the performance of work-related activities precluded by the claimant's [RFC]" (Tr. 31). ALJ Hall, relying on the vocational expert's testimony, concluded that Plaintiff "could do her past relevant work as a family case worker as generally performed." (*Id.*). While Plaintiff contends the ALJ failed to make specific findings regarding travel and sustained activity requirements, the ALJ need not have done so. The inquiry is not whether Plaintiff could perform her past job as actually performed but as generally performed. *See Studaway*, 815 F.2d at 1076 ("[Claimaint] must prove 'an inability to return to his former *type* of work and not just to his former job.'") (quoting *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).

Plaintiff does not take issue with the hypothetical questions posed to the vocational expert. Thus, the ALJ properly relied on the vocational expert's testimony, which constitutes substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019); *see Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (vocational expert's testimony can constitute substantial

evidence at step five).  In any event, Plaintiff takes no issue with the ALJ's alternative step five

findings, which are also supported by the vocational expert's testimony, so any step four error

would be harmless.  *See Castro v. Kijakazi*, No. 3:20-CV-02259, 2022 U.S. Dist. LEXIS 54885,

at *29-30 (N.D. Ohio Mar. 25, 2022).  No error exists warranting remand.

## I. Symptom Evaluation

### 1. Arguments of the Parties

Plaintiff avers the ALJ improperly discounted Plaintiff's testimony of her symptoms based

on "selective evidence and mischaracterization of the record." (DN 12-1 PageID # 459).  Plaintiff

contends ALJ Hall did not properly evaluate the "limited duration of Plaintiff's activity tolerance;

the recurrence of symptoms after exertion; and the impact of fatigue and flare-ups." (*Id.*).

In response, Defendant avers that the ALJ's evaluation "reasonably discounted Plaintiff's

subjective complaints" and Plaintiff's argument is improperly asking the Court to reweigh the

evidence in her favor (DN 15 PageID # 473).

### 2. Applicable Law

In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations

of the claimant and make findings.  20 C.F.R. § 404.1529; Social Security Ruling 16-3p.  A

claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish

that she is disabled; there must be medical signs and laboratory findings which show the existence

of a medical impairment that could reasonably be expected to give rise to the pain alleged.  20

C.F.R. § 404.1529(a).  In determining whether a claimant suffers from debilitating pain, the two-

part test set forth in *Duncan*, 801 F.2d at 853, applies.  First, the ALJ must "examine whether there

is objective medical evidence of an underlying medical condition."  *Id.*  If there is, then the ALJ

must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When, as in this case, the reported pain suggests an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. § 404.1529(c)(3).

A plaintiff's level of daily activity is a factor which the ALJ may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. § 404.1529(c)(3)(i); *Bogle*, 998 F.2d at 348; *Blacha*, 927 F.2d at 231. A second factor is the frequency that plaintiff has sought treatment for the allegedly disabling condition is also a factor that may be considered in assessing his subjective complaints. 20 C.F.R. § 404.1529(c)(3)(v). A third factor is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between [Plaintiff's] statements and the rest of the evidence . . ." 20 C.F.R. § 404.1529(c)(4). Yet another factor is the medication used to alleviate the alleged pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). Mild medication and infrequency of dosages do not bear out claims of debilitating pain. *See Maher*, 898 F.2d at 1109.

*3. Discussion*

After recounting Plaintiff's reported symptoms, ALJ Hall determined that the evidence did not support the intensity or extent of her reported symptoms:

> She testified that before she quit working her employer was accommodating her limitations. She was required to drive to seven different counties, but due to dizziness and fatigue, others did the work for her. Her testimony of flare-ups is not adequately supported by the medical record as treatment notes generally show refills of medication and minimal complaints. She testified she was unable to pinpoint any triggers. Her testimony that it takes a week to recover from a bad

flare-up is not supported.  In addition to minimal complaints and minimally positive clinical findings, lab studies also show improvement.  The undersigned is not persuaded by her testimony that she needs to lie in the floor with her feet elevated for six hours a day given her positive response to medication.  She testified she has been fatigued for years, but she is not treated for fatigue beyond CPAP therapy for sleep apnea, which she stated at the hearing was helpful.  She and her husband fix meals together and per her function report, she drives, pays bills, reads, watches television, and listens to music.  Her testimony of significant mental health issues is inconsistent with not seeking any mental health treatment until October 2023, and inconsistent with normal mental status findings noted in the treating notes.  She testified that she does counseling via zoom.

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  She has not presented consistent factors suggesting she would be unable to maintain activity in accord with the limitations allowed for in the identified residual functional capacity assessment.  Accordingly, the undersigned finds that since the alleged onset date, the claimant has been able to perform full-time, sustained work activity within the limitations of the above residual functional capacity assessment.  As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with her positive response to Methotrexate and largely normal physical examinations.  Overall, the signs and findings in the medical record portray less intensity, extent, and persistence than alleged.

(Tr. 29-30).  The ALJ's discussion is detailed, specific, and responsive to the factors considered in evaluating symptoms, such as daily activity, frequency that Plaintiff sought treatment, inconsistencies and conflicts between Plaintiff's testimony and the evidence, and mild medication. 20 C.F.R. § 404.1529(c).  As to Plaintiff's contention that the ALJ mischaracterized the record, Plaintiff provides no specific citations or descriptions as to what specifically was mischaracterized. If Plaintiff is suggesting that the ALJ mischaracterized the entire record, the undersigned finds no inaccuracies in the ALJ's recounting of the evidence.  In sum, no error exists warranting remand.

## J.   Conclusion

The decision of the Commissioner shall be affirmed.  The ALJ adequately supported her determination with substantial evidence and complied with all applicable law.

## IV.   ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

July 23, 2026

Copies:  Counsel

21